# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ECOLAB, INC., | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. _____ |
| vs. | ) ) |
| PRESTON ALEXANDER, ONE DEGREE MEDICAL, LLC and ONE DEGREE MEDICAL HOLDINGS, LLC, | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Ecolab, Inc. ("Ecolab" or the "Company"), for its Complaint against Defendants Preston Alexander ("Alexander"), One Degree Medical, LLC, and One Degree Medical Holdings, LLC (all defendants collectively, "Defendants"), states and alleges as follows:

## PRELIMINARY STATEMENT

1. Ecolab brings this action against its former employee, Alexander, and his company, One Degree Medical, related to Alexander's breach of the confidentiality and return-of-property covenants contained in his April 15, 2015 Employee Agreement (the "Agreement") and his misappropriation of trade secret information for the benefit of his competitive company. A copy of the Agreement

is attached hereto as **Exhibit 1**. Specifically, one day prior to his separation from Ecolab, Alexander misappropriated Ecolab's information by sending confidential, proprietary and trade secret documents from his Ecolab email account to his personal email account without authorization or any legitimate business purpose. Alexander later formed a company to compete directly with Ecolab, and has since successfully obtained at least one major customer from Ecolab.

2. In addition to breaching the terms of the Agreement, Defendants' misappropriation of Ecolab's valuable trade secrets information constitutes a violation of the federal Defend Trade Secrets Act and the Georgia Trade Secrets Act.

3. Defendants' unlawful conduct has already caused and has the potential to cause tremendous damage and irreparable harm to Ecolab. Ecolab seeks injunctive relief as well as appropriate monetary damages against Defendants.

## PARTIES, JURISDICTION AND VENUE

4. Ecolab is a Delaware corporation with its principal place of business in Minnesota. Ecolab is registered to do business in the State of Georgia.

5. Alexander is an individual who, upon information and belief, currently resides in Atlanta, Georgia.

6. One Degree Medical, LLC and One Degree Medical Holdings, LLC are Georgia limited liability companies with a principal place of business in Georgia.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 insofar as it is an action among parties who are citizens of different states and the amount in controversy is more than $75,000.

8. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Ecolab asserts a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831.  The Court has supplemental jurisdiction regarding the state law claims under 28 U.S.C. § 1367.

9. This Court has general personal jurisdiction over Alexander because he worked for Ecolab and lives in this judicial district.

10. This Court has specific personal jurisdiction over Defendants because they intentionally and purposefully committed numerous illegal and wrongful acts against Ecolab in this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2).

## ALLEGATIONS COMMON TO ALL COUNTS

**I.     Background Regarding Ecolab**

12. Among other areas of business, Ecolab is engaged in the highly competitive business of providing specialty patient temperature management programs, products, equipment, and services in hospitals and other healthcare facilities.

13. As part of this healthcare business, Ecolab provides a fluid management system, which is designed to heat fluids to be used in surgical settings. Ecolab has created and provides to its customers a surgical irrigation fluid warmer, which ensures fluids are accurately held at the proper temperatures to prevent inadvertent hypothermia during surgery. Ecolab also has created and provides to its customers surgical slush machines, which allow for rapid cooling of tissue or organs during surgery.

14. Ecolab has spent substantial time, expense, and effort in developing product formulations, packaging and sales materials, labels and confidential business and customer information, which consist of confidential information including, but not limited to, customers' buying habits, customer purchasing histories, specific customer pricing, margins, protocols, operations, requirements, programs, processes, preferences and personalities, as well as contacts within the customers' organizations. This confidential information is not available to Ecolab's competitors and provides Ecolab with a competitive advantage in the healthcare patient temperature management industry.

15. Ecolab has also spent significant time and expense developing good will and beneficial business relationships with its customers.

16. In order to protect its confidential information and customer relationships, Ecolab, among other things, requires appropriate employees to execute Employee Agreements containing restrictive covenants tailored to protect those valuable company assets.

17. Ecolab, in addition to utilizing Employee Agreements, also utilizes computer passwords, limitations on access to confidential information, conducts training on confidentiality and otherwise stresses the importance of maintaining confidentiality to its employees as means to protect its confidential information and trade secrets. It also maintains electronic communication and code of conduct policies regarding confidentiality of Ecolab trade secrets and proprietary information.

18. Ecolab utilizes a secure cloud-based system (Microsoft Office 365) to store and maintain much of its confidential, proprietary and trade secret information.

19. Ecolab limits access to its secure system to key employees and certain other authorized individuals.

**II.   Alexander's Employment with Ecolab**

20. Alexander began working for Ecolab in April 2015 and was employed as a Marketing Associate until February 2016. Beginning in February 2016,

5

Alexander was an Assistant Marketing Manager until he separated from the Company on February 17, 2017.

21. As both a Marketing Associate and Assistant Marketing Manager, Alexander worked to market Ecolab's healthcare products and services, including its patient temperature management products and services.

22. As both a Marketing Associate and Assistant Marketing Manager, Alexander had access to Ecolab confidential business information and Ecolab's customers with whom he was paid to develop and foster beneficial business relationships utilizing the aid and resources of Ecolab.

23. As a condition of his employment with Ecolab, Alexander executed the Agreement (attached as **Exhibit 1**) with Ecolab on April 15, 2015.

24. The Agreement prohibits Alexander from using Ecolab's confidential information as follows:

> The Employee will not at any time, both during and after his employment by the Company, communicate or disclose to any person, firm or corporation, or use for his benefit or for the benefit of any other person, firm or corporation, directly or indirectly, any of the Company's CONFIDENTIAL INFORMATION acquired by the Employee while employed by the Company.

Agreement at § 3.

25. The Agreement defines "Confidential Information" as follows:

> CONFIDENTIAL INFORMATION means information and trade secrets not generally known about the Company's business such as, but not limited to, credit information on the Company's customers, customer route books, cards or lists containing the names, addresses, buying habits, and business locations of past, present and prospective customers, sales reports, service reports, price lists, product formulae and methods and procedures relating to services.

Agreement at § 2.

26. In addition to having its employees sign confidentiality agreements, Ecolab takes numerous steps to ensure that its employees protect the information on the Ecolab computer system (including Ecolab's trade secrets and confidential information) and that its employees do not use or disclose that information. Those steps include: (a) handbook and IT policies; (b) physical security to protect against the disclosure of sensitive materials to third parties or Ecolab employees who do not have a business need to access the materials; and (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

27. Ecolab also maintains policies to protect its confidential information, which prohibit unauthorized use of Ecolab information and systems for personal

7

gain or in competition with Ecolab. Ecolab's policies further describe the Company's computer security requirements. For example, Ecolab's Communication and Technology Use Policy restricts the use of Ecolab's devices, systems, and accounts to prevent the loss of sensitive information.

### III. Alexander's Theft of Confidential and Trade Secret Information.

28. On February 16, 2017, Alexander emailed Ecolab's highly confidential and trade secret confidential information from his Ecolab email account to his personal email account.

29. This information included two Microsoft Excel files. The first Excel file contained Ecolab's fluid warming sales history for 2016. The second Excel file contained Ecolab's surgical slush sales history for the approximate same time period.

30. These Excel files contain detailed pricing information for Ecolab's fluid warming and surgical slush products. This pricing information is highly confidential. Ecolab's competitors would be able to use the documents to benchmark their prices against Ecolab and potentially to undercut Ecolab.

31. The Excel files also contain extensive information regarding Ecolab's customers that purchase Ecolab's fluid warming and surgical slush products. This information includes, among other things, the identity of hundreds of Ecolab's

customers and each customer's purchase history over a multi-year period. Customer's purchase history information includes information both regarding what specific products each customer has purchased as well as their frequency of purchase. Ecolab's competitors would be able to use this information to determine each customer's needs, allowing them to tailor their own product offerings to Ecolab's customers with non-public, confidential information.

32. The customer information misappropriated, in addition to identifying all of Ecolab's customers, included information regarding the customer's location, the specific products and parts purchased by each customer, revenue received for each customer, the source by which the customer received products, how the products are being delivered, pricing including case pricing, and how often the customer places orders. This misappropriated information would be extremely valuable to any competitor.

33. Alexander had no legitimate reason to send the aforementioned documents to his personal email account.

34. Alexander separated from employment with Ecolab on February 17, 2017, the day after he sent this confidential and trade secret information to his personal email address. Alexander knew at the time he sent the information to his

9

personal email address on February 16, 2017 that his employment with Ecolab was ending the next day.

35. In his marketing role at the time of his separation, Alexander had no legitimate business purpose for accessing this information or for sending it to his personal email address even if he was not separating from Ecolab the next day. Even assuming Alexander had a legitimate business purpose for accessing the information (which he did not), Alexander had access to Ecolab's system remotely, so he had no need to move the documents off of the system to his personal email address.

36. The only reasons for Alexander to have sent the documents to his personal email account would have been so that he could use them for his own competitive purposes post-employment with Ecolab. Additionally, Alexander could share the documents with competitors, which would pose a massive risk to Ecolab. By sending the documents to his personal email account, Alexander was able to use and/or disclose the documents without his activities being visible to Ecolab.

**IV.   Alexander Establishes a Competing Business**

37. In or about February 2020, Alexander became the president of One Degree Medical, LLC and/or One Degree Medical Holdings, LLC (collectively, "ODM").

10

38. According to the Georgia Secretary of State's Corporations Division, One Degree Medical LLC was a Georgia limited liability company that was formed on February 18, 2018 and was administratively dissolved on October 22, 2020. Alexander is the registered agent of this company.

39. According to the Georgia Secretary of State's Corporations Division, One Degree Medical Holdings, LLC is a Georgia limited liability company that was formed on or about December 13, 2019.

40. According to ODM's website, onedegreemedical.com, the company sells products related to preventing inadvertent patient hypothermia. ODM sells fluid warming products to healthcare companies in direct competition to Ecolab's patent temperature management business.

41. One of Ecolab's current customers, Charleston Area Medical Center ("CAMC") has just recently purchased ODM's fluid warming products.

42. The two Excel files that Alexander emailed to his personal email account on February 16, 2017 contained information regarding CAMC. This information included Ecolab's sales history to CAMC, including which products CAMC purchased, how many products were purchased, the price paid for those products, and when the purchases were made. All of this information, which is

11

highly confidential to Ecolab, could be used by a competitor such as ODM to underbid and unfairly compete against Ecolab.

43. Upon belief, Defendants have used the confidential information contained in the Excel files to compete against Ecolab for CAMC's business. Upon belief, Defendants also have used similar information for other customers of Ecolab for Defendants' own benefit.

## COUNT I
## Violation of the Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*)
### (against All Defendants)

44. Ecolab realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

45. The files and data Alexander sent to his personal email are trade secrets of Ecolab subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

46. The information contained in these files is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. Ecolab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

47. Ecolab takes, and at all times here relevant has taken, reasonable measures to maintain the confidential and trade secret nature of this information. Those steps include restricting availability of certain confidential information to key employees, requiring all employees to execute agreements with confidentiality provisions, physical security measures to protect against the disclosure of sensitive materials to third parties, and IT security efforts.

48. Defendants' foregoing conduct constitutes an actual and threatened misappropriation and misuse of Ecolab's trade secret information in violation of the DTSA.

49. Upon information and belief, and as Ecolab expects to establish on further investigation and discovery, Defendants have improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential and trade secret business information and strategies contained in the files Alexander took from Ecolab without authorization and in breach of his Agreement.

50. Upon and information and belief, Defendants have taken Ecolab's trade secrets through improper means and have used such trade secrets on behalf of ODM, including because: (1) the materials are useful to a competitor such as ODM; (2) Defendants are going after some or all of the customers reflected in the materials;

(3) Defendants have successfully transitioned work to ODM from at least one of the customers reflected in the materials; and (4) Defendants would not have taken the trade secrets if they were not planning on using or disclosing them.

51. Defendants engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Alexander owed to Ecolab as an agent, employee and representative of Ecolab.

52. Defendants obtained the above-referenced files by improper means.

53. Defendants have misappropriated Ecolab's confidential information and trade secrets to the detriment of Ecolab and for Defendants' own commercial and economic advantage, in violation of the federal Defend Trade Secrets Act, 18 U.S.C. 1831, *et. seq.*

54. Defendants' conduct has been willful and/or malicious.

55. As a direct and proximate result of Defendants' actual and threatened misappropriation of Ecolab's trade secrets, Ecolab has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of

misappropriation and from continued possession in any form of trade secret information belonging to Ecolab.

## COUNT II
## Georgia Uniform Trade Secrets Act (against All Defendants)

56. Ecolab realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

57. The Georgia Uniform Trade Secrets Act ("GUTSA"), codified at O.C.G.A. § 10-1-760 *et seq.*, prohibits persons from misappropriating trade secrets.

58. Defendants knowingly violated the GUTSA. Alexander sent multiple files from Ecolab's computer system to his personal email account for no business reason including, but not limited to, product information; pricing and quantity information; customer information; and other confidential and proprietary trade secret information.

59. Defendants still have possession of these documents/files and have no legitimate reason to be in possession of this material.

60. The trade secrets misappropriated by Defendants derive independent economic value from not being generally known or ascertainable by proper means.

The information is the result of years of investment by Ecolab and allows Ecolab to remain competitive in the marketplace.

61. Ecolab takes, and at all times here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include: (a) handbook and IT policies; (b) physical security to protect against the disclosure of sensitive materials to third parties or Ecolab employees who do not have a business need to access the materials; and (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

62. Defendants have used and continue to use and/or possess Ecolab's trade secret information, without Ecolab's authorization.

63. By engaging in the conduct described throughout this Complaint, Defendants have misappropriated Ecolab's trade secrets and confidential information, without the consent of Ecolab, to the detriment of Ecolab, and for Defendants' own commercial advantage, in violation of the Georgia Uniform Trade Secrets Act.

64. Defendants' conduct has been willful and/or malicious.

65. As a direct and proximate cause of Defendants' actual and threatened misappropriation of Ecolab's trade secrets, Ecolab has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to Ecolab.

## COUNT III
**Breach of Contract (against Alexander)**

66. Ecolab realleges and incorporates by reference the preceding paragraphs as if stated fully herein.

67. The Agreement (attached as **Exhibit 1**) is an enforceable contract between Ecolab and Alexander.

68. Alexander has breached the Agreement in that he sent confidential, proprietary and trade secret information to his personal email account for no legitimate business reason and has failed and refused to return Ecolab's information.

69. Section 12 of the Agreement provides that Ecolab may be entitled to its attorneys' fees and court costs in an action to enforce the Agreement.

70. Ecolab has complied with the terms of the Agreement.

71.    As a direct and proximate result of Alexander' breaches, Ecolab is threatened with irreparable injury and is therefore entitled to injunctive relief enforcing the terms of the Agreement, monetary damages in an amount to be determined at trial, and its attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff prays that this Court enter judgment against Defendants, jointly and severally, and award Plaintiff the following relief:

A.    Temporary, preliminary, and permanent injunctive relief: (i) requiring Defendants to return to Ecolab all confidential, proprietary, and/or trade secret information belonging to Ecolab within their possession, including but not limited to the materials that Alexander sent to his personal email account and any intellectual property derived therefrom (in whatever form such information may exist); (ii) requiring Defendants to make available for inspection and imaging any computers, external storage devices, or personal data devices on which they accessed and/or retained Ecolab's confidential information or trade secrets as well as any and all Cloud-based file management accounts (including Google Drive, iCloud, and Dropbox), email accounts, or other devices or accounts on which Ecolab's information could reside, and an order requiring Defendants to share equally the cost

of this forensic review; (iii) enjoining Defendants from using, accessing, or disclosing any of Ecolab's confidential, proprietary, and trade secret information; (iv) an order enjoining Defendants from soliciting and/or doing business with any customer identified in the Ecolab documents misappropriated by Defendant Alexander, and (v) prohibiting Alexander from otherwise breaching the terms of the Agreement.

      B.     Monetary damages in an amount to be determined at trial, including compensatory damages and punitive and/or exemplary damages.

      C.     Plaintiff's attorneys' fees and costs.

      D.     Such other relief as is just and proper.

Ecolab demands trial by jury on all issues so triable.

Respectfully submitted this 17th day of November, 2020.

>*/s/ John W. Stapleton*
>John W. Stapleton
>Georgia Bar No. 368790
>FISHER & PHILLIPS LLP
>1075 Peachtree Street, NE
>Suite 3500
>Atlanta, Georgia 30309
>Tel: (404) 231-1400
>jstapleton@fisherphillips.com
>
>*Attorney for Plaintiff*