# EXHIBIT 1

| Employee Agreement | ECOLAB® Ecolab Center<br>St. Paul, MN 55102 |

AGREEMENT between Ecolab Inc., a Delaware corporation (the "Company") and Preston Alexander (the "Employee").

The Company's business is highly competitive and the Company has invested considerable sums of money in developing products, equipment, training programs, sales programs, technical service programs and account records for the proper-servicing of its customers. Such records include the type of equipment installed, the prices paid by each customer, the names and positions of the customer's key personnel, the types of services performed, the frequency and destination of shipments, and the products generally ordered by the customer. While employed with the Company, the Employee will receive valuable training under the Company's sales and/or service programs and will be entrusted with the information in the Company's account records. In return for the Company providing the Employee with this training and information, the Employee agrees not to use this training and information to unfairly compete against the Company. The Employee also agrees that the restraints imposed by this agreement are reasonable and necessary to protect the Company's business and the jobs of other Company employees.

Therefore, in consideration of the covenants and agreements contained herein, the parties agree as follows:

1. The Company will employ the Employee in a sales or sales management position, or a service or service management position for such period of time and for such compensation, including salary and employee benefits, as may be mutually agreeable to both parties. The compensation shall be deemed to be mutually agreeable to both parties if the Company pays the compensation and the Employee accepts the compensation. The Company may at any time, with or without adjusting the Employee's compensation, alter the geographic limits of any sales or service territory assigned to the Employee, or assign the Employee to a new territory, or change the customers assigned to the Employee. Both the Company and the Employee shall have the right to terminate the employment at any time.

2. The Company will train the Employee in selling the Company's products and/or services, and the Employee may be trained in providing actual services of Company. The Company will provide the Employee with special techniques and information, including CONFIDENTIAL INFORMATION, which the Company believes will be helpful and necessary to the performance of the Employee's duties. CONFIDENTIAL INFORMATION means information and trade secrets not generally known about the Company's business such as, but not limited to, credit information on the Company's customers, customer route books, cards or lists containing the names, addresses, buying habits and business locations of past, present and prospective customers, sales reports, service reports, price lists, product formulae and methods and procedures relating to services.

3. The Employee will not at any time, both during and after his employment by the Company, communicate or disclose to any person, firm or corporation, or use for his benefit or for the benefit of any other person, firm or corporation, directly or indirectly, any of the Company's CONFIDENTIAL INFORMATION acquired by the Employee while employed by the Company.

4. The Employee shall perform such services as may be assigned to him from time to time in accordance with the Company's policies and procedures. The Employee shall timely submit written sales and service reports using the Company's standard report forms. The Employee will provide the Company with immediate written notice of any outside business activities in which he engages while employed by the Company.

5. During employment with the Company and for a period of one (1) year immediately following the termination of his employment with the Company, the Employee will not service, sell, solicit the sale of, or accept orders for any COMPETING PRODUCTS or COMPETING SERVICES to any customer of the Company with whom the Employee did business or attempted to do business, or whose accounts was supervised by or assigned to the Employee or with regard to which the Employee received commissions or other compensation, at any time during the twelve (12) month period immediately preceding the termination of his employment. During said one year following termination, the Employee also will not assist any COMPETING FIRM to engage in the activities prohibited by the foregoing sentence. A COMPETING FIRM means any person or organization (including one owned in whole or in part by the Employee) which is engaged in the development, production, use, marketing or sale of a COMPETING PRODUCT or COMPETING SERVICE. A COMPETING PRODUCT or COMPETING SERVICE means any product or service which is the same as, or similar to, and competes with, a product or service of the Company which was part of the product or service line handled by the Employee, or persons supervised by the Employee, or about which the Employee received CONFIDENTIAL INFORMATION during his last two (2) years of employment by the Company. If the Employee violates the covenant contained in this paragraph, the term of said covenant shall be extended for one year from and after the later of (a) the date on which the Employee permanently ceases such violation or (b) the date on which any court issues an order or judgment enforcing the covenant; provided, that in no event shall the term of the covenant be extended for a term beyond twenty-four months following termination

Rev. 1/22/99

of the Employee's employment with the Company.

6. During the period of Employee's employment by Company and for a period of one (1) year immediately following the termination of his employment with the Company, the Employee will not hire or induce, attempt to induce or in any way assist or act in concert with any other person or organization in hiring or inducing or attempting to induce any employee or agent of Company to terminate such employee's or agent's relationship with Company.

7. Upon termination of his employment, the Employee will return in good order all customer information including route books, sales and service reports and recaps, sales and service manuals and literature, price books, samples, Company-issued tools, equipment and parts and any other written information in the Employee's possession, custody or control concerning customers, products or services of the Company. The Employee shall also return all credit cards, keys, automobiles and any other Company property in his possession.

8. All of the provisions of the Agreement which are to be effective following termination of the Employee's employment, shall be effective regardless of whether such termination was voluntary or involuntary. The Employee warrants that prior to entering into this Agreement he has disclosed to the Company any agreements with any previous employers which would prevent him from performing any duties for the Company.

9. This Agreement shall not become effective or be binding upon the parties until accepted on behalf of the Company by the signature hereon of an authorized employee of the Company. This Agreement supersedes any previous agreements between the parties, written or oral, relating to this subject matter and may be amended or modified only by a writing signed by the Employee and an authorized employee of the Company. This Agreement shall inure to the benefit of the Company's successors or assigns.

10. Whenever used in this Agreement, words in the masculine gender shall include the feminine. All references to "Company" shall include subsidiaries of Ecolab Inc.

11. If any of the provisions of this Agreement are held to be invalid or unenforceable by a court of competent jurisdiction, such holding shall not invalidate any of the other provisions of this Agreement, it being intended that the provisions of this Agreement are severable.

12. If the non-competition restrictions of this Agreement are determined by a court of competent jurisdiction to be too broad, as to either time or territory, to allow enforcement of such restrictions to their full extent, then such restrictions shall be enforced to the full extent permitted by law as determined by said court. In any proceeding brought to enforce the Company's rights hereunder in addition to any injunctive relief to which the Company may be entitled, damages recoverable shall include without limitation, court costs and reimbursement of the Company's attorney's fees and disbursements.

I have carefully read and understand and agree to all of the terms of this agreement.

_____
Employee Signature

_____
Witness

4/15/15
Date

Accepted by Ecolab Inc.

By _____

VPHR TA & ER
Title

7/13/15
Date